IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ANDY LISKO;
AMY LISKO;
MATT PERRY; and
WENDY PERRY                                                                             PLAINTIFFS

V.                                          4:23CV00757 JM

MID-SOUTH AGRICULTRUAL EQUIPMENT, INC.;
CRARY INDUSTRIES, INC.;
BOSCH REXROTH CORPORATION;
CNH INDUSTRIAL AMERICA, LLC;
CASE NEW HOLLAND INDUSTRIAL, INC.; and
JOHN AND JANE DOES 1-20                                                                 DEFENDANTS

## ORDER

Pending are two motions to dismiss, one filed by Crary Industries, Inc. ("Crary") and one filed by Bosch Rexroth Corporation ("Rexroth" and collectively the "Defendants"). The Defendants contend that the Court lacks personal jurisdiction over them pursuant to Rule 12(b)(2). Plaintiffs have responded, and the Defendants have replied.

On June 15, 2022, Plaintiff Matt Perry, an employee of GreenPoint Ag in Prairie County, Arkansas, was replacing a fan and fan casing on a Case IH Titan 4540 Tractor equipped with an 810 Flex-Air Applicator (the "Applicator"). The replacement process included removing the Rexroth TR-16159 Bursa Hydraulic Motor Pump (the "Bursa Hydraulic Motor" or the "Bursa Motor") and its hoses from the Tractor. After removing the Bursa Motor and hoses, installing the replacement fan and casings, and reinstalling the Bursa Motor and hoses, Matt Perry tested the Applicator. Matt Perry did not realize he had reinstalled the Bursa Motor backwards. During the test, the fan speed increased beyond normal, ruptured into pieces and fragments, and breached the wall of the casing. Pieces of shrapnel struck Matt Perry in the chest and Plaintiff Andy Lisko, who was observing, in the abdominal area.

Plaintiffs state that their employer Greenpoint Ag purchased all items that led to their injuries from the named defendants, through Mid-South Agricultural Equipment, Inc. as distributor at its location in Forrest City, Arkansas. According to the Complaint, Crary manufactured the original and replacement fans and casings. Crary is an Illinois corporation with a principal place of business in North Dakota. (ECF No. 21-1 at ¶ 6-7. Rexroth manufactured the Bursa Motor and hoses which Plaintiff had to remove and reinstall to replace the fan. Rexroth is a Pennsylvania corporation with a principal place of business in North Carolina. (ECF No. 4-1 at ¶ 3). Crary and Rexroth contend that they do not have sufficient minimum contacts with the State of Arkansas for the Court to exercise personal jurisdiction over them.

I.   **Standard to be applied to a Rule 12(b)(2) analysis**

Rule 12(b)(2) provides an avenue for dismissal where a federal court does not have personal jurisdiction over a defendant. When personal jurisdiction is challenged or controverted in federal court, the plaintiff has the burden to show jurisdiction exists. *See Denver v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004) (internal citation omitted). Specifically, a plaintiff must make a prima facie showing that personal jurisdiction exists, which requires creating "a reasonable inference that the defendant can be subjected to jurisdiction within the state*." K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). Although "[t]he evidentiary showing required at the prima facie stage is minimal, the "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion. *Id.* (internal citations omitted). The district court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor in deciding whether the plaintiff made the requisite showing.

II.   **Discussion of the Law**

"Federal courts apply the long-arm statute of the forum state to determine the existence of

2

personal jurisdiction over the parties," subject to the dictates of due process. *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (quoting *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020)). Arkansas's long-arm statute permits personal jurisdiction to the full extent permitted by the Fourteenth Amendment, so the due process analysis is dispositive. Ark. Code Ann. § 16-4-101; *Yanmar Co., Ltd. v. Slater*, 386 S.W.3d 439 (Ark. 2012). "Even if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

Due process requires a defendant to have such minimum contacts with the forum state that the maintenance of a suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U. S. 255, 262 (2017)). "That focus led to our recognizing two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* (citing *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

Although Plaintiffs concede that Arkansas does not have general jurisdiction over Rexroth or Crary, Plaintiffs contend that the Defendants' activity in the State provides more than the required minimum contacts for specific personal jurisdiction. Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford*, 592 U.S. at 359 (quoting

3

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "The defendant, we have said, must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). "They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

In addition, the plaintiff's claims "must arise out of or relate to the defendant's contacts" with the forum. *Ford,* 592 U.S. at 359 (quoting *Bristol-Myers,* 582 U.S. 262 (2017)). "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. at 359-360 (internal quotations omitted). "[A] strong relationship among the defendant, the forum, and the litigation is the essential foundation of specific jurisdiction." *Id.* at 365 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks omitted)).

The Eighth Circuit has set forth a five-factor test for district courts to assess specific jurisdiction, "with the first three factors being of primary importance: '(1) the nature and quality of [defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. The third factor speaks to the particular question of specific jurisdiction." *Whaley*, 946 F.3d at 452 (8th Cir. 2020) (internal citations omitted)). "The fourth and fifth factors carry less weight and are not dispositive." *Kaliannan*, 2 F.4th at 733 (citation omitted).

4

A. <u>Crary</u>

Plaintiffs claim that the Crary fan was only suitable for row crop farming and that Arkansas has a high volume of row crop farming. Plaintiffs state that, for this reason, Crary knew and intended for its fan and associated products to enter Arkansas in high volumes. Plaintiffs claim that Crary directly sold the fan and components to individual consumers, corporate consumers, and third-party dealers in Arkansas. Plaintiffs further contend that the amount of communication Crary had regarding sales in Arkansas show that Crary purposefully availed itself of the privilege of doing business here.

Based upon the evidence, however, Crary had very few contacts with the State of Arkansas. Crary sold a single fan hub assembly to Jeremy Counce in Bay, Arkansas. Mr. Counce initiated the sale by contacting Crary. Crary sold a single OEM[1] fan kit to C.J. Parker in Carlisle, Arkansas, which Mr. Parker initiated. Harvest International ("HI"), an entity located in Iowa, submitted purchase orders to Crary for various OEM fan components and, on occasion, requested that Crary drop ship the products to HI's customer in Arkansas directly. Crary shipped the product to Carlisle, Arkansas, on behalf of HI. AGROdeviate LLC ("Agro"), an agricultural equipment manufacturer located in Nebraska, owned W&A Manufacturing Company located in Pine Bluff, Arkansas. On several occasions, Agro ordered Crary OEM fan components to be shipped to Nebraska but directed the bill to be sent to W&A Manufacturing in Pine Bluff. Bayer U.S. Crop Science, principally located in St. Louis, Missouri, has a location in Jonesboro, Arkansas. In April 2019, Bayer purchased one (1) OEM fan kit which was shipped to the Jonesboro facility and billed to Bayer in Missouri. In March 2021, Bayer purchased a single OEM motor kit which Crary shipped and billed to the Jonesboro facility. In

---

[1] Original Equipment Manufacturer

addition, none of these fans or components were involved in the incident at issue in this case.

Plaintiffs claim that Crary's internal email communications are significant to the jurisdiction analysis. However, the internal Crary emails had nothing to do with the State of Arkansas. They are about standard business issues like shipping schedules and invoices. As far as the Court can discern, there are only two emails from a Crary employee to someone located in Arkansas. Shawn Zabel, Crary Product Manager for Fan Sales, emailed Jeremy Counce, a resident of Arkansas, twice. Zabel emailed to confirm Mr. Counce's order and to update Mr. Counce on the shipping date of his order. Neither the internal nor direct email communications by Crary with Arkansas consumers proves that Crary purposefully availed itself of the privilege of conducting business in Arkansas.

Plaintiffs contend that Crary's communication with outside parties via email about impellers coming loose in Arkansas weighs in favor of specific jurisdiction. However, there are no emails provided where a Crary employee emailed with anyone in Arkansas about the issue. Crary's client, International Harvester in Iowa, emailed Mr. Zabel about the Arkansas impellers. Zabel emailed with International Harvester in Iowa about the Arkansas impellers. These communications are not of the nature, quality, or quantity of contacts that support specific jurisdiction. Crary did not "reach out beyond its home."

Viewing the facts in the light most favorable to Plaintiffs, the first three factors weigh against personal jurisdiction over Crary. The Court finds that Crary does not have minimum contacts with the State of Arkansas. Crary did not target or reach out to the individuals for sales of its products in Arkansas. In fact, only two Arkansas residents have initiated sales with Crary in the last nine years. Crary did not maintain offices, employees, or bank accounts in Arkansas. The fact that Crary's fans were sold to companies that used them in the manufacture of farming equipment and marketed their equipment in Arkansas is not enough to put Crary on notice that it may be haled into court in

Arkansas. Plaintiffs have failed to set forth facts to show Crary purposefully availed itself of the privilege of conducting business activities in this State of Arkansas or that Crary had reason to anticipate being haled into court here.

    B. <u>Rexroth</u>

As stated, Rexroth is a Pennsylvania corporation with its principal place of business in North Carolina. (Dec. of R. Miklautsch, ECF No. 4-1). According to the Declaration of Robert Miklautsch, Senior Legal Counsel for Rexroth, Rexroth is not registered to do business in Arkansas, has no bank accounts in Arkansas, and has not made an application for a loan or received a loan from a bank in Arkansas. *Id.* Rexroth does not maintain any offices or other facilities in Arkansas, has no employees in a Rexroth location in Arkansas and has no members of its Board of Directors who reside in Arkansas. *Id.*

According to the Declaration of Richard Witmer, Rexroth's Key Account Manager- Case New Holland, Rexroth does not manufacture the Bursa Motors. (Dec. of R. Witmer, ECF No. 4-2). Rexroth is a reseller of the Bursa Motor to its only buyer, CNH Industrial America LLC ("CNH"). CNH is a Delaware limited liability company with its principal place of business in Wisconsin. (Comp., ECF No. 2 at ¶ 8). During at least the last five years, Rexroth has not delivered Bursa Hydraulic Motors to any CNH location in Arkansas.[2] (Dec. of R. Witmer, ECF No. 4-2). Rexroth previously delivered the Bursa Hydraulic Motor to CNH at CNH's manufacturing facility in Benson, Minnesota, but deliveries to the CNH location in Minnesota stopped in 2021. *Id.* Rexroth also delivers the Bursa Hydraulic Motors to CNH at a CNH location in Indiana for use as service and replacement parts. *Id.*

---

[2] In its Reply, Rexroth states that it has never delivered a Hydraulic Motor to any CNH facility in Arkansas. (Reply, ECF No. 63 at p. 2). However, Mr. Witmer's declaration states Rexroth has not delivered one to Arkansas in at least five years.

Rexroth did not perform any work related to the design, manufacture, testing, assembly, engineering, or labelling of the Bursa Hydraulic Motors in Arkansas. *Id.* It did not participate in the final assembly of Bursa Hydraulic Motor in the CNH 4540 Tractor or the 810 Flex-Air Applicator and did not sell the Tractor or Applicator involved in this litigation. *Id.* Rexroth did not receive payment for the Bursa Motor in Arkansas. *Id.* It did not sell the Bursa Hydraulic Motor to other customers or the general public in Arkansas. *Id.* Rexroth did not market or advertise the Bursa Hydraulic Motors in Arkansas. *Id.* It has no control over or knowledge of the destination of the Bursa Hydraulic Motor once it is delivered to CNH. *Id.* It does not know or control where, when, or how the Tractors or Applicators containing the Bursa Hydraulic Motors are shipped, distributed, sold, re-sold, or serviced. Rexroth had no role in bringing the completed Tractor or Applicator into Arkansas. *Id.*

Plaintiffs continue to argue that Rexroth manufactured and sold the Bursa Hydraulic Motor to CNH with the knowledge that the Bursa Motors were designed, targeted, and intended to reach a small subset of states, including Arkansas, based upon the volume of the farming industry in Arkansas. Plaintiffs have provided evidence that Rexroth has done extensive direct business with consumers and dealers in Arkansas including sales, customer service, warranty work, and repairs. (Ex. E to Pl's Resp, ECF No. 58 at p. 24-428). Plaintiffs provided Rexroth's excise tax returns filed in Arkansas between 2019 and 2023 which show more than $14 million dollars in Sales for Resale. (Ex. F, ECF No. 60). Plaintiffs have also provided a list of products sold by Rexroth to Arkansas which purportedly shows that Rexroth has sold at least thirty-three different "hydraulic and industrial motors." (Resp., ECF No. 59 at p. 12). As far as the Court can tell, Exhibit E does not show that Rexroth sold Bursa Hydraulic Motors directly to Arkansas. It conclusively shows that the Bursa Hydraulic Motor with the product number R902193415, at issue here, is not listed on Exhibit E as

being sold to Arkansas.

Plaintiffs argue that the Supreme Court in *Ford* dispelled the idea that specific jurisdiction is a causation-only analysis. The "most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum'. … [T]he 'or[]' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford*, 141 S.Ct. at 1026. "A claim, however, does not automatically 'relate to' a defendant's forum state contacts whenever a defendant has activities in the forum state." *Id.*

While Plaintiffs have proven that Rexroth sold a large quantity of products in Arkansas between 2019 and 2023, Plaintiffs' claim does not relate to the sale of the products that Rexroth sold in Arkansas. The Bursa Motor at issue here is only sold to CNH as a component for CNH products. There is no evidence that Rexroth has any control over CNH's sales, distribution, or marketing. Plaintiffs have failed to show what, if any, activity or conduct of Rexroth caused the Bursa Motor to be in Arkansas. The Court finds that Plaintiffs have failed to show that their injuries arose out of or related to Rexroth's contacts with Arkansas. As the Eighth Circuit stated in Brother and Sister in Christ, "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 952 (8th Cir. 2022) (quoting *Goodyear*, 564 U.S. at 931, n.6). *See also Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 375-76 (8th Cir. 1990) (The court did not have personal jurisdiction over the component-part manufacturer where there was no showing that the component-part manufacturer purposefully directed its activities towards the forum.). For this reason, the first, second, and third factors weigh against personal jurisdiction over Rexroth. The remaining two factors

do not tip the balance.

### III.     Conclusion

For these reasons, Crary's motion to dismiss (ECF No. 21) and Rexroth's motion to dismiss (ECF No. 4) are GRANTED. Crary Industries, Inc. and Bosch Rexroth Corporation are dismissed without prejudice.

IT IS SO ORDERED this 14th day of July, 2025.

*/s/ James M. Moody Jr.*
James M. Moody Jr.
United States District Judge